AO 91, Rev. 11/82 (J Bologna Authorizing) **CRIMINAL COMPLAINT** # 13- 014

| **United States District Court** | DISTRICT<br>Eastern District of Pennsylvania | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>RONALD L. SELLS | DOCKET NO. | |
| | MAGISTRATE'S CASE NO.<br>13-145 M | |

FILED JAN 31 2013 MICHAEL E. KUNZ, Clerk By Dep. Clerk

Complaint for violation of Title 21 United States Code § 841

| NAME OF JUDGE OR MAGISTRATE | OFFICIAL TITLE | LOCATION |
|---|---|---|
| Honorable L FELIPE RESTREPO | U.S. Magistrate Judge | Philadelphia, PA |

| DATE OF OFFENSE | PLACE OF OFFENSE | ADDRESS OF ACCUSED (if known) |
|---|---|---|
| January 17, 2013 | Philadelphia, PA | 18 Pressie Lane<br>Churchville, Maryland |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On January 17, 2013, at 2103 East Somerset Street, Philadelphia, in the Eastern District of Pennsylvania, the defendant knowingly and intentionally possessed with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1),(b)(1)(A).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

SEE AFFIDAVIT ATTACHED HERETO.

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| | |
|---|---|
| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title)<br>Kathleen O'Hanlon |
| | OFFICIAL TITLE<br>Special Agent, FBI |

Sworn to before me and subscribed in my presence.

| SIGNATURE OF MAGISTRATE (1) | DATE |
|---|---|
| L Felipe Restrepo<br>Honorable L FELIPE RESTREPO, United States Magistrate Judge | 1/31/13 |

1) See Federal Rules of Criminal Procedure rules 3 and 54.

13-145M

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Kathleen A. O'Hanlon, having been duly sworn, deposes and states as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed as a Special Agent of the FBI since 1994. For approximately the past 7 ½ years, I have been assigned to the FBI Philadelphia's Organized Crime/Labor Racketeering Squad, which conducts investigations into violations of federal law being committed by criminal organizations and members of Labor Unions operating in the Philadelphia area.

2. I am currently investigating the illegal drug distribution of RONALD L. SELLS, and others, which includes violations of:

   a. 21 U.S.C. § 841, distribution of a controlled substance; and

   b. 21 U.S.C. § 846, conspiracy to distribute a controlled substance.

3. The factual allegations set forth are based on my personal observations and knowledge, information shared with me by other investigators who are participating in this investigation, information obtained through subpoenaed records and interviews, a review of public records, and physical surveillance. The factual allegations described below include the information necessary to establish probable cause to arrest RONALD L. SELLS; accordingly, the factual allegations do not include all facts known to me as a result of this investigation.

4. A confidential human source ("CHS") reported to the FBI that on Thursday, January 17, 2013, the CHS met and spoke with RONALD L. SELLS in Churchville, Maryland. The CHS and SELLS know each other through the Outlaws Motorcycle Club (OMC). SELLS is the Philadelphia Chapter President of the OMC. The CHS is a probationary member of the OMC. The CHS first met SELLS approximately three months ago, and the CHS has identified a

photograph of SELLS for the FBI. Investigation has confirmed that information provided by the CHS now, and in the past, is reliable.

5. During their January 17th meeting, the CHS spoke to SELLS at SELLS'S residence in Churchville, Maryland. Investigation has confirmed that SELLS primary residence is located at 18 Pressie Lane, Churchville, Maryland. SELLS and the CHS walked to a garage/shed that is located on SELLS'S property. SELLS told the CHS "I got the shit." The CHS understood "the shit" was, in fact, drugs. SELLS said he was concerned his wife (i.e., SELLS'S wife) knew "the shit" was in the garage/shed and that he wanted to remove it. The drugs were removed from that location, and SELLS, the CHS, and two other individuals associated with the OMC ("COOP" and "ROB") drove from Maryland to Philadelphia, Pennsylvania on January 17, 2013.

6. On January 17, 2013, when the four individuals arrived at 2103 East Somerset Street, Philadelphia, Pennsylvania, SELLS stated to the CHS "this shit can't be in the clubhouse." SELLS also said "if the bosses find out, I'm gonna be dead and so are you." Investigation has determined the property located at 2103 - 2107 East Somerset Street is the OMC's clubhouse in Philadelphia. A clubhouse is a location where members of a motorcycle club will socialize together. SELLS told the CHS "we need money. We gotta get with your guy and move this stuff." Based on these comments, the CHS agreed to store and then sell the drugs for SELLS. The CHS took sole possession of the drugs in Philadelphia.

7. The CHS contacted the FBI and the FBI took possession of the drugs on January 18, 2013. In particular, the FBI collected two items weighing over 800 grams. Item One was a plastic bag that contained large pieces of crystaline substance. Item Two was another plastic bag

that contained three smaller plastic bags, each with a crystaline substance. FBI Special Agent Matthew Yaeger conducted a field test on the substances. Agent Yaeger is certified to conduct such testing. Agent Yaeger reported these tests were all positive for the presence of methamphetamine.

**8.** The CHS and SELLS have been in phone contact on multiple occasions to discuss the potential sale of this methamphetamine. These phone conversations have been monitored by the FBI. For example, on January 18, 2013, the CHS told SELLS the CHS was in New York City and had a potential buyer who was interested in purchasing two to four ounces of "the stuff." The CHS asked SELLS how much he would be willing to sell an ounce for, and SELLS said he would take "18" but wanted "20." This meant SELLS would accept $1,800 for an ounce but preferred $2,000 for an ounce. SELLS explained the profit for the sale would be $100 for both SELLS and the CHS.

**9.** Later on January 18, 2013, the CHS asked SELLS what price could be charged for all the drugs. SELLS said he wanted $49,000, and he would take no less than "48." This meant SELLS would accept no amount lower than $48,000 for all the drugs.

**10.** On January 30, 2013, at approximately 9:30 pm, the CHS called and spoke with SELLS. The CHS said he had SELLS'S money and he wanted to meet SELLS in Philadelphia to return that money. The CHS told SELLS he only wanted to deal with SELLS because he did not trust anyone else. SELLS initially refused, but later acquiesced, to a meeting in Philadelphia on January 31, 2013.

**11.** On January 31, 2013, at approximately 10:20 am, the CHS called SELLS and reported he was in a parking lot on the 3300 block of Aramingo Avenue, Philadelphia, PA. The

CHS told SELLS to meet him there, and SELLS asked the CHS for directions to that lot. SELLS arrived in the lot at approximately 10:30 am. SELLS arrived alone in a black pick-up truck with Maryland license plates. The CHS and SELLS spoke - outside their vehicles - about the events of the preceding days. During their conversation, SELLS said that he had to lay out $12,000 to purchase the drugs from an unnamed person, and SELLS later gave those drugs to the CHS to sell.

**12.** Based on all the facts set forth in this affidavit, and based on my experience as an agent, I have probable cause to believe RONALD L. SELLS violated 21 U.S.C. § 841(a)(1)(b)(1)(A).

Kathleen O'Hanlon
Special Agent, FBI

SWORN TO AND SUBSCRIBED
TO ME THIS 31 DAY OF January 2013.

HONORABLE L. FELIPE RESTREPO
U.S. Magistrate Court Judge